**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| **RODNEY NICHOLS,** an individual,<br><br>Plaintiff,<br><br>v.<br><br>**FIRST DATA RESOURCES, LLC,** a Delaware Limited Liability Corporation,<br><br>Defendant. | **Case No. 8:18-cv-378**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Place of Trial: Omaha, NE**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Rodney Nichols ("Mr. Nichols") is a 52-year-old African American man who worked at First Data Resources, LLC ("First Data") for more than 25 years, until First Data fired him on April 1, 2016. Mr. Nichols worked his way up through the ranks at First Data, starting as a temporary employee and eventually landing a position as a supervisor in the Zip Sort department. Throughout his career, Mr. Nichols volunteered for special projects and sought out every possible opportunity for advancement. Mr. Nichols' supervisor, Bob Totusek, held Mr. Nichols to a different standard than younger, white Zip Sort supervisors. Ultimately, even though Mr. Nichols excelled in every measurable criterion for his position, First Data disciplined and fired Mr. Nichols because he didn't meet Totusek's "eye test."

## PARTIES

2. Rodney Nichols ("Mr. Nichols") is a 52-year-old African American man who worked at First Data Resources, LLC ("First Data") for more than 25 years, until First Data fired him on April 1, 2016. Mr. Nichols lives in Omaha, Nebraska.

3. First Data Resources, LLC ("First Data") provides technology and services solutions to merchants and financial institutions around the world. First Data is a

Delaware Limited Liability Corporation doing business in Nebraska with a location at6855 Pacific Street, Omaha, NE 68106.

**JURISDICTION & VENUE**

4. This matter arises under federal and state law. This Court has jurisdiction pursuant to 28 U.S.C. §1331 based on Mr. Nichols' federal claims set forth in this Complaint. This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this District pursuant to 28 U.S.C. §1381(b)(2), because the acts complained of here were orchestrated from, planned in, and conducted in this District.

6. Mr. Nichols dual filed charges of discrimination with the Omaha Human Rights and Relations Department ("OHRRD") (Charge No. 16-0523-033-ER) and Equal Employment Opportunity Commission ("EEOC") (Charge No. 32G-2016-0039). The OHRRD issued its determination on May 9, 2018 and Mr. Nichols received the OHRRD's decision on May 11, 2018. The EEOC issued its Notice of Right to Sue on June 13, 2018. (A copy of the EEOC Notice of Right to Sue is attached as Exhibit A and incorporated by this reference as if fully set forth).

**FACTS**

7. Mr. Nichols started working at First Data on November 5, 1990. Over his 25-year career at First Data, he was promoted up through the ranks to Operations Supervisor in the "Zip Sort" department. In his position, Mr. Nichols was responsible for hiring and firing personnel, monitoring the work standards of subordinates, developing production standards, and assisting with employee benefits.

8. Mr. Nichols had a long-term record of excellence at First Data. He received numerous awards and commendations over the years. In November 2012, for example, First Data recognized Mr. Nichols' achievements with a "BRAVO Center Stage Award". In First Data's own words, the Center Stage Award is "the most prestigious award presented at First Data, and is only presented to individuals whose performance is so exemplary, that their work will have a lasting and invaluable impact on the organization."

9. None of Mr. Nichols' accomplishments were ever enough to convince Mr. Nichols' supervisor, Operations Director, Bob Totusek ("Totusek") that Mr. Nichols was a valued First Data employee. Beginning in 2014, Totusek consistently rated Mr. Nichols' performance as less than satisfactory. When Mr. Nichols asked for specific examples and support for Totusek's negative appraisals, Totusek refused to elaborate. Totusek instead cited to soft criteria, stating that Mr. Nichols' performance, "doesn't meet my eye test."

10. Totusek demanded that Mr. Nichols spend 80% of his work time on the Zip Sort floor. Mr. Nichols attempted to comply with Totusek's demand, even though First Data's own Supervisor Expectations dictate that supervisors such as Mr. Nichols spend 25% of their time on the production floor.

11. Totusek's criticisms surprised Mr. Nichols, because Mr. Nichols' direct reports often praised his willingness to help out on the floor and work side by side with Zip Sort employees.

12. In March 2014, Totusek issued Mr. Nichols a 90-day Improvement Action Plan ("IAP"). According to First Data's internal policies, Mr. Nichols was ineligible for a merit increase, promotion and tuition assistance while he was on an IAP. Due to the

discrepancy between the standards in Totusek's IAP and First Data's Supervisor Expectations, Mr. Nichols requested Totusek provide a revised position description for his position. Mr. Nichols wanted to be sure that Totusek was holding all Zip Sort supervisors to the same standards. Totusek agreed to provide a revised position description, but never did so.

13. During Mr. Nichols IAP, he met with Totusek each week to discuss Mr. Nichols' performance. Totusek never again mentioned poor performance in any of these meetings. Eventually, Totusek cancelled his weekly one-on-one meetings with Mr. Nichols and told Mr. Nichols that he would let Mr. Nichols know if he had any other concerns regarding Mr. Nichols' performance.

14. Mr. Nichols eventually met with Bill Larson ("Larson") to discuss his concerns about his negative performance review and IAP. Larson agreed with Mr. Nichols that Totusek should explain where he came up with the standard requiring Mr. Nichols to spend 80% of his time on the floor and provide documentation supporting this expectation. Nonetheless, Totusek persisted in his refusal to provide requested documentation.

15. In October 2014, Mr. Nichols received an overall increase in survey scores from employees in his department. Significantly, survey scores were down across the board among First Data supervisors.

16. Even though he had successfully completed his IAP and his survey scores showed overall improvement, First Data issued Mr. Nichols negative mid-year and year-end performance reviews in 2015.

17. In January 2016, First Data issued Mr. Nichols another IAP.

18. Totusek finally provided Mr. Nichols with updated criteria for his position in 2016. Significantly, even though Mr. Nichols had repeatedly requested an updated Zip Sort Manager Position Description clarifying Totusek's expectations for all Zip Sort Managers, Totusek labeled his updated criteria "Rodney Expectations."

19. On April 1, 2016, First Data fired Mr. Nichols after more than 25 years of dedicated service.

20. After his termination, Mr. Nichols requested reinstatement and complained about discrimination and bias to First Data CEO Frank Bisignano. First Data never reinstated Mr. Nichols.

## CLAIM I

**FIRST DATA VIOLATED TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 & NFEPA BY DISCRIMINATING AGAINST MR. NICHOLS BASED ON RACE & COLOR**
(42 U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1104 *et seq.*)

21. Mr. Nichols incorporates by reference paragraphs 1 through 20, as if fully set forth.

22. Since being hired, Mr. Nichols was discriminated against based on his race, color, and in violation of Title VII of the Civil Rights Act of 1964, as Amended, and Section 48-1104 of the Nebraska FEPA. According to Title VII of the Civil Rights Act of 1964, It shall be an unlawful employment practice for an employer –

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion [or] sex;
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect

> his status as an employee, because of such individual's race, color, religion [or] sex; race.

42 U.S.C. § 2000e-2.

23. Similarly, Nebraska's FEPA provides:

> It shall be an unlawful employment practice for an employer:
>
> (1) To fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion [or] sex.

Neb. Rev. Stat. § 48-1104(1).

24. Mr. Nichols' performance at First Data continually outshined other Zip Sort managers. Nonetheless, First Data held Mr. Nichols to a different standard than white Zip Sort managers, critiquing his performance based on unwritten and nebulous criteria and Mr. Nichols' supposed failure to meet Totusek's "eye test."

25. In spite of Mr. Nichols constant efforts to understand his manager's expectations, Totusek refused to provide Mr. Nichols with an updated job description and disciplined Mr. Nichols for failing to meet job criteria that did not exist for white Zip Sort supervisors.

26. Ultimately, First Data fired Mr. Nichols, even though other white employees were never disciplined or terminated for spending less than 80% of their time on the production floor.

## CLAIM II

### FIRST DATA VIOLATED THE AGE DISCRIMINATION IN EMPLOYMENT ACT & NFEPA BY DISCRIMINATING AGAINST MR. NICHOLS BASED ON HIS AGE

(29 U.S.C. §623; Neb. Rev. Stat. § 48-1104 *et seq.*)

27. Mr. Nichols incorporates by reference paragraphs 1 through 26 as if fully set forth.

28. The Age Discrimination in Employment Act prohibits an employer:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. §623(a)(1), (2) and (3).

29. First Data held Mr. Nichols to different standards than younger employees in his same position. Totusek disciplined and ultimately fired Mr. Nichols for failing to meet job criteria that applied only to Mr. Nichols and did not apply to any of First Data's younger Zip Sort managers.

30. After Mr. Nichols' termination, a younger employee was promoted to fill Mr. Nichols' position.

## REQUEST FOR RELIEF

Mr. Nichols requests judgment in his favor and awarding the following:

1. Damages for Mr. Nichols' lost and future wages based on his termination;

2. Damages for Mr. Nichols' emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

3. Damages for Mr. Nichols' out of pocket expenses for mental health treatment;

4. Punitive damages for First Data's knowing violation of federal discrimination laws;

5. Costs and attorney fees; as allowed by law, and

6. Such other and further relief as the Court deems appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY IN OMAHA, NEBRASKA.**

DATE: November 6, 2018.

By: s/ *Alexis S. Mullaney*
Alexis S. Mullaney #25908
Terry A. White #18282
**CARLSON & BURNETT LLP**
17525 Arbor Street
Omaha, NE 68130
Direct (402) 952-4175
Main (402) 934-5500
alexis@carlsonburnett.com
*Attorneys for Plaintiff*

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Rodney Nichols**

From: **St. Louis District Office**
**1222 Spruce Street**
**Room 8.100**
**Saint Louis, MO 63103**

Exhibit A

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **32G-2016-00039** | **Joseph J. Wilson, State & Local Program Manager** | **(314) 539-7816** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Joseph J Wilson

James R. Neely, Jr.,
Director

June 13, 2018
*(Date Mailed)*

Enclosures(s)

cc: **Alexis S. Mullaney, Attorney**
**CARLSON/ BURNETT**
**17525 Arbor Street**
**Omaha, NE 68130**

**FIRST DATA TECHNOLOGIES INC**
**ATTN: Human Resources Director**
**7305 Pacific Street**
**Omaha, NE 68114**

**Cody E. Brookhouser**
**MCGRATH/NORTH ATTORNEYS**
**First National Tower, Suite 3700**
**1601 Dodge Street**
**Omaha, NE 68102**

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

### PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | 16-0523-033-ER |
| [X] EEOC | 32G-2016-00039 |

**Omaha Human Rights and Relations Department** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Rodney Nichols** | [redacted] | [redacted] |

| Street Address | City, State and ZIP Code |
|---|---|
| [redacted] | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **FIRST DATA TECHNOLOGIES INC** | **15 - 100** | **(404) 890-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7305 Pacific Street, Omaha, NE 68114** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[ ] RETALIATION [X] AGE [ ] DISABILITY [ ] GENETIC INFORMATION
[ ] OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| **04-01-2016** | **04-01-2016** |

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am Black and 50 years old. I began my employment with the Respondent on or around November 5, 1990. In my position as an Operations Supervisor I was responsible for hiring and firing personnel, monitoring the work standards of subordinates, developing production standards, and assisting with employee benefits. I was a satisfactory employee. My direct supervisor was Director Robert Totusek (White, 50's). Around January 2016, I was issued a disciplinary action by the Respondent. On or around April 1, 2016, I was discharged by the Respondent.

DISCRIMINATION STATEMENT: I allege I was disciplined and discharged by the Respondent on the bases of my race (Black) and age (50), in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended and the Omaha Civil Rights: Anti-Discrimination Ordinance Sec. 13-89 because:

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. RN

I declare under penalty of perjury that the above is true and correct.

6/29/16 [signature: Rodney A Nichols]

Date — Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

[signature: Renee Biglow]

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

[signature: Rodney A Nichols]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

6/29/16

GENERAL NOTARY - State of Nebraska
RENEE BIGLOW
My Comm. Exp. November 10, 2016

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 16-0523-033-ER |
| | [X] EEOC | 32G-2016-00039 |

**Omaha Human Rights and Relations Department** and EEOC

*State or local Agency, if any*

1. I am Black and 50 years old.
2. I was a satisfactory employee.
3. Around January 2016, the Respondent issued me a written disciplinary action for allegedly not being engaged with my lead personnel and direct reports, despite the fact that my employee satisfaction survey numbers were satisfactory or above satisfactory. The Respondent expected me to comply with unwritten rules that younger and non-Black supervisors were not required to comply with.
4. On or around April 1, 2016, I was discharged by the Respondent. Younger and non-Black supervisors who were issued disciplinary actions and/or had lower employee satisfaction survey numbers than me were not discharged by the Respondent.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. RW

I declare under penalty of perjury that the above is true and correct.

6-29-16 [signature]

*Date* *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

Renee Biglow

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

[signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

6/29/16

GENERAL NOTARY - State of Nebraska
RENEE BIGLOW
My Comm. Exp. November 10, 2016